UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MA. ANAHAW A. PEASEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:05CV2172 AGF |
| | ) |
| TRANS STATES AIRLINES, INC., and | ) |
| LOCAL 618 AUTOMOTIVE, | ) |
| PETROLEUM, AND ALLIED | ) |
| INDUSTRIES EMPLOYEES UNION, | ) |
| | ) |
| Defendants. | ) |

## **AMENDED MEMORANDUM AND ORDER**[1]

This employment discrimination case is before the Court[2] on two motions for summary judgment, one filed by Defendant Trans State Airlines, Inc. (TSA), and one filed by Defendant Local 618 Automotive, Petroleum, and Allied Industries Employees Union (Local 618 or the union). Plaintiff Ma. Anahaw Peasel is a citizen of the United States whose nation of origin is the Philippines. She worked for TSA, a commercial airline, as a flight attendant from April 2002 until October 2005, when she was terminated. During this time, Plaintiff was a member of Local 618 and covered by its collective bargaining agreement (CBA) with TSA. For the reasons set forth below,

---

[1] On October 19, 2007, the Court issued a Memorandum and Order granting in part and denying in part the motion for summary judgment filed by Defendant Trans State Airlines, Inc. ("TSA"). The present Amended Memorandum and Order contains an amended discussion, on pages 15 to 18 herein, of Plaintiff's claim of national origin discrimination against TSA. The presentation of the background facts has also been amended slightly to follow the chronology of events.

[2] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

TSA's motion shall be granted in part and denied in part, and Local 618's motion shall be granted in its entirety.

## PROCEDURAL BACKGROUND

Plaintiff initiated this action pro se on November 16, 2005, against only TSA, under Title VII of the Civil Rights Act of 1964, claiming that her termination was due to her national origin and to complaints she filed with the Equal Employment Opportunity Commission (EEOC), the Fair Employment Practices Agency (FEPA), and her union. Along with the complaint, Plaintiff filed a motion for leave to proceed in forma pauperis (IFP), a motion for appointment of counsel, and a financial affidavit, signed by Plaintiff on October 13, 2005, supporting the motions. In the affidavit, Plaintiff represented that she was not currently employed; that she was last employed in October 2005, earning $1,757 per month; that her spouse earned $1,822 per month; that she had one dependant; that her assets consisted of a house worth $189,000 and two cars worth a total of $9,000; that she had debt of approximately $185,000, including a mortgage on the house for approximately $147,000; and that she had bills of approximately $1,400 per month. (Doc. #2.)

The record establishes that, in fact, Plaintiff was hired as a flight attendant by another airline on October 20, 2005, which was after she completed her financial affidavit, but approximately one month before she submitted it. On December 8, 2005, the Court granted Plaintiff IFP status, having found, based upon the financial information provided in the affidavit, that Plaintiff was financially unable to pay any portion of the filing fee. On December 9, 2005, the Court denied Plaintiff's motion for appointment of

counsel, finding that the dispute appeared straightforward with no complex legal issues.

On February 21, 2006, private counsel entered his appearance on behalf of Plaintiff, and filed an amended complaint on May 10, 2006, adding Local 618 as a defendant. In this complaint, Plaintiff asserts that TSA violated Title VII by discriminating against her on the basis of her national origin and in retaliation for her filing grievances against a TSA pilot; TSA breached the CBA's anti-discrimination provision, as well as procedural provisions regarding the imposition of disciplinary actions; TSA breached the CBA by failing to honor a negotiated settlement with Plaintiff; and Local 618 breached its duty of fair representation.

TSA posits four bases for its argument that it is entitled to summary judgment: (1) Plaintiff committed fraud by misrepresenting on her financial affidavit that she was not employed when she submitted the affidavit; (2) Plaintiff failed to exhaust her administrative remedies with regard to her retaliation claim; (3) This Court does not have jurisdiction over Plaintiff's claims against TSA, and res judicata precludes litigation of these claims, as they were already heard and decided against her by the TSA Airlines Flight Attendants' System Board of Adjustment (System Board), created by the CBA pursuant to the Railway Labor Act (RLA), 45 U.S.C. § 184; and (4) Plaintiff failed to establish a prima facie case of national origin discrimination under Title VII.

Local 618 argues that it is entitled to summary judgment because Plaintiff's claims that TSA breached the CBA and that Local 618 breached its duty of fair representation were already litigated in the context of the System Board hearings, and cannot now be re-litigated; and because the record establishes that Plaintiff was properly

represented by the union for her various employment discipline problems.

## FACTUAL BACKGROUND

Plaintiff was hired by TSA in April 2002. On August 7, 2003, Plaintiff filed a complaint with TSA against a TSA flight pilot, Enrique DePaiva, for behavior she found personally offensive and insulting, in that he would make fun of her name in the presence of others. (Pl.'s Ex. B.)[3] On December 20, 2003, Plaintiff filed a complaint with TSA against DePaiva, alleging that he had behaved unprofessionally toward her during a flight that day. (Pl.'s Ex. C.) DePaiva filed a complaint against Plaintiff concerning her unpreparedness and poor behavior on that same flight. DePaiva's complaint was supported by statements of other witnesses. By letter dated February 26, 2004, TSA told Plaintiff that she would be suspended for three days (from March 10 through March 12, 2004) as a result of the complaint against her. The letter also stated that any further infractions would result in disciplinary action up to and including termination.

On February 13, April 22, and October 8, 2004, other complaints were lodged against Plaintiff based upon her alleged failure to follow procedures and upon passenger reports that she was rude to them. The complaint of February 13 was from TSA pilot Fred Tolerico,[4] who reported that a passenger on his flight that day told him that Plaintiff was the meanest flight attendant she had ever encountered. (TSA's Ex. 3-H.)[5] Based on

---

[3] In her amended complaint, Plaintiff alleges that DePaiva made fun of her name by saying, "Ma ma ma ma, Ana Peasel!" and would stare at her and laugh.

[4] Plaintiff asserts that Tolerico was a known friend of DePaiva.

[5] The Court hereby overrules Plaintiff's objections to both of Defendant's exhibits (Docs. # 62, 63).

these incidents, TSA placed two written reprimands dated April 24, 2004, in Plaintiff's personnel file, and sent her a warning letter dated November 10, 2004. (TSA Exs. J, K, & O.)

Plaintiff filed several grievances challenging TSA's disciplinary actions against her. Under the grievance procedure provided for in the CBA, a flight attendant is to first notify TSA of any grievance, within seven days of the relevant event. If no settlement is reached, the grievance may be referred to the System Board within thirty days. The System Board consists of two members, one from the company and one from the union. If the System Board is deadlocked, a neutral arbitrator is selected by the company and union to break the deadlock. The CBA provides that the decision of the System Board shall be final and binding on the parties. (TSA's Ex. 1.) The Court also notes that the CBA prohibits TSA from discriminating against employees on the basis of, inter alia, national origin.

In addition, on December 13, 2004, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against TSA and the union, checking only the box labeled "National Origin" as the basis for her charge. She stated that she was threatened with discharge on November 10, 2004, continuing as follows:

> I believe that I am being discriminated against due to my National Origin, Phillipine, because when others (Americans) lodge complaints against me, I am not allowed to defend myself, as no true investigation is ever done, and I am threatened with discharge. When I attempt to lodge a complaint against my co-workers, a different procedure/protocol is followed completely.
>
> I am the only Philippine on [TSA's] flight crew. I have not been given a chance to correct the situation or provide testimony in my behalf,

whereas Americans are allowed to do so in similar circumstances. (TSA's Ex. 8.)

On January 26, 2005, a System Board hearing was held on the disciplinary grievances. Plaintiff was represented by an attorney provided by the union. The hearing resulted in a deadlock, with the employer representative voting to deny the grievances and the union representative voting to uphold them. An arbitration was therefore scheduled to resolve the deadlock. The arbitration was set for September 21, 2005. The record includes two undated "To Whom it may Concern" letters from co-workers of Plaintiff, stating that she was a good flight attendant and performed her job admirably. (Pl.'s Ex. H.)

In May and June 2005, three TSA employees filed three different complaints with TSA alleging that Plaintiff was not performing her job properly, and that Plaintiff had threatened one of them after learning about his complaint against her. On July 18, 2005, after being on vacation, Plaintiff called in sick, but according to TSA, did not follow proper procedures in making the call and did not provide a doctor's note to support her need to be off work.

A Right to Sue letter was issued by the EEOC on September 7, 2005.

At the September 21, 2005 arbitration, Plaintiff was represented by the union's attorney. After the hearing, but before a decision was issued, TSA decided to terminate Plaintiff. On October 10, 2005, Plaintiff, who was then in Oklahoma, was notified of a meeting scheduled for October 13, 2005, in St. Louis, arranged by TSA's In Flight Supervisor to discuss personal leave and other personnel matters. Counsel for TSA and

6

Local 618 engaged in negotiations in an attempt to reach a severance agreement, and on or about October 12, 2005, they reached an oral agreement whereby Plaintiff was to submit a written resignation, and TSA would pay Plaintiff $7,500 plus money for unused sick leave, vacation leave, and per diem allowance. On October 12, 2005, Plaintiff faxed a written resignation, adding language on her own accord that she was resigning due to a hostile work environment. (Pl.'s Depo. 54, 156.) TSA rejected this resignation, and the next day, October 13, 2005, terminated Plaintiff.

The October 13, 2005 letter informing Plaintiff of her termination stated that she had failed to comply with sick-call procedures and that she then confronted the co-worker who had submitted the report about this. The letter listed five incidents about which Plaintiff had been counseled in the past five months, and stated as follows: "After careful review of your personal file, previous discipline imposed on you, and your complete failure to respond to discipline and counseling, you are being terminated from employment effective immediately." (TSA's Ex 3-X.)

Plaintiff then filed grievances asking for her job back if TSA were not going to honor the $7,500 agreement. By letter to Plaintiff dated November 7, 2005, TSA explained that after TSA began processing Plaintiff's voluntary resignation pursuant to the agreement reached on October 12, 2005, Plaintiff "suddenly changed the terms of the settlement and then withdrew from that agreement altogether." The letter further stated as follows:

> It appears this was designed so you would not have to appear in St. Louis to meet with your supervisor on October 13, 2005. It is inappropriate to state that [TSA] withdrew its offers of settlement when

it was you, in fact, who withdrew from the agreed upon settlement.

(Local 618's Ex. #23.) Accordingly, TSA denied Plaintiff's grievance.

Plaintiff pursued the matter with the System Board. When Plaintiff initiated this action on November 16, 2005, the termination grievances were still pending, as well as the arbitrator's decision on the disciplinary grievances. On November 18, 2005, Plaintiff filed another discrimination charge with the EEOC against TSA and the union. This time Plaintiff checked the boxes "National Origin" and "Retaliation" as the bases of her charge. Plaintiff charged as follows:

> Reports of uninvestigated allegations were put in my personnel file[.] [W]hen grieved to the union, the union rep. discouraged me to pursue grievance for reason that the process will take forever. I managed to pursue my grievance but due to this I did not receive any kind of support from my superiors anymore, more harassments and hard time reaching my union representative. Before I was terminated I was offered settlement offers to leave the company quietly, which [I] did not receive [as] of this date. I accepted company's offers due to after hearing the offers I believed the workplace is or became a hostile environment for me to work.

(Pl.'s Ex. F).

In the section on the charge form entitled "Retaliation," Plaintiff wrote that she believed that she was retaliated against due to the various grievances and complaints she had filed. She wrote that she had complained to a union representative regarding the "Company's and direct superiors treatment towards me after grievances/complain[ts.]" She further wrote that she was harmed as a result of her complaints by "Offers to leave the company, retaliation and then termination and not receiving my vacation pay, hours lost, sick pay, per diem and settlement offers." Id.

8

In a memo-to-file dated January 26, 2006, an EEOC investigator recorded his notes from an "intake interview" with Plaintiff. The investigator noted that Plaintiff claimed that she resigned from her job on October 12, 2005, due to "the hostile work environment from retaliation," but that the next day TSA refused to accept her resignation unless she re-wrote it because TSA did not like that she wrote that she was resigning due to a hostile work environment. The investigator noted that during the intake interview Plaintiff raised new issues of retaliation not covered in her prior charge, such as that after the arbitration, TSA called her to a meeting to discuss her personality issues and told her there were communication barriers because of where she was from, and that after her employment with the airline, TSA refused to honor in her case the agreement between airlines allowing employees to fly free on each other's aircraft. (TSA's Ex. 9.)

On February 6, 2006, the investigator wrote to Plaintiff informing her that the "inquiry" she had submitted to the EEOC had not been filed as a charge, stating that the investigator concluded that it was unlikely that additional investigation would result in a finding that the law had been violated, and advising her of her right to file a new charge of discrimination. (TSA's Ex. 10.) On February 24, 2006, a Right to Sue letter was issued by the EEOC pertaining to Plaintiff's November 18, 2005 charge. Id.

On March 31, 2006, the arbitrator issued a decision in favor of TSA on four out of the five disciplinary grievances Plaintiff had filed. The arbitrator upheld the three-day suspension and one of the letters of reprimand, but ordered that the other letter of reprimand be removed from Plaintiff's file. On April 25, 2006, Plaintiff's termination grievances were heard at an evidentiary hearing before the System Board. Plaintiff's case

9

was presented by the union. The two members of the System Board both ruled in favor of TSA. As noted above, the amended complaint was filed on May 10, 2006.

## DISCUSSION

### IFP Application

It is true that when Plaintiff submitted her financial affidavit in support of her request to proceed IFP, she was employed, rendering inaccurate the representation on the form to the contrary. Nevertheless, it is likely that even had this item been accurate, IFP status would have been granted. The Court notes that as a general matter, a litigant's spouse's income is not considered in the IFP determination. The Court does not condone Plaintiff's failure to submit an updated and current affidavit and plainly, Plaintiff should have updated her employment information prior to filing. Upon review of the record, though, and recognizing that Plaintiff did qualify for IFP status, the Court concludes that the circumstances here do not warrant dismissal of Plaintiff's complaint, or other sanction.

### Subject Matter Jurisdiction and Res Judicata

The Court also rejects TSA's argument that it is entitled to summary judgment based upon the exclusive jurisdiction of the System Board over Plaintiff's discrimination and retaliation claims, or under the doctrine of res judicata. Labor disputes in the airline industry are governed by the RLA, which provides for the establishment of arbitration panels called system boards, composed of members selected by the air carriers and the unions representing the employees. 45 U.S.C. §§ 153, 184-85. The system boards have jurisdiction to consider "minor" disputes between air carriers and their employees.

"Minor" disputes are disputes which "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i). See generally, Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252-53 (1994) (stating that "minor" disputes "involve controversies over the meaning of an existing [CBA] in a particular fact situation") (citations omitted).

The Court concludes that Plaintiff's pursuit of grievances of discipline and termination without cause, through hearings and arbitration under the CBA, does not preclude a civil suit under Title VII against TSA for discrimination or retaliation. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 49 (1974) ("Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a [CBA]."); Gilmore v. Northwest Airlines, Inc., 2007 WL 2422831, at *2 (D. Minn. Aug. 21, 2007) (holding that employee who availed herself of the grievance procedure under a CBA could bring federal action under the Family Medical Leave Act); Blakely v. USAirways, Inc., 23 F. Supp. 2d 560, 574-76 (W.D. Pa. 1998). This is so, even where, as here, the CBA prohibits discrimination. See Blakely, 23 F. Supp. 2d at 574-76.

**Retaliation Claim against TSA**

In her amended complaint, under the section entitled "Retaliation," Plaintiff alleges that before she filed complaints against DePaiva "for national origin discrimination," her performance "had always been good," but that after she filed those complaints, she was "barraged with false accusations of misconduct," and was disciplined without cause on numerous occasions. Plaintiff also alleges that after her termination by

TSA and new employment with the other airline, TSA banned her from flying on its own planes, while not banning other terminated employees from doing so. In paragraph 63 of the amended complaint, Plaintiff asserts as follows:

>That through temporal proximity, explicit statements, and reasonable inferences drawn, the plaintiff was disciplined, further harassed, pressured to resign, denied negotiated-for severance benefits, terminated, denied access to [TSA] flights, slandered and given negative employment references because she complained of national origin discrimination and retaliation by [TSA] pilot DePaiva, retaliation by Tolerico, retaliation and unfair treatment by the Airline and "hostile work environment," among other protected activity.

TSA argues that because Plaintiff did not include a charge of retaliation in her December 13, 2004 EEOC charge, and failed to file a new charge after receiving the letter from the EEOC investigator, a retaliation claim is now precluded. In advancing this argument, TSA does not refer to the EEOC charge Plaintiff filed on November 18, 2005. As noted above, on this charge form, Plaintiff checked the box "Retaliation," as well as the box "National Origin," and stated that she believed she was retaliated against due to her various grievances and complaints.

Title VII requires claimants to file a discrimination charge with the EEOC, within 180 days of the complained-of event, before they may bring a Title VII action in court. 42 U.S.C. § 2000e-5(e)(1). "[E]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1024 (8th Cir. 2004) (cited case omitted). While courts do not require that lawsuits mirror the administrative charges, "the sweep of any subsequent judicial

complaint may be [only] as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination," and allegations in a lawsuit that are outside the scope of the EEOC charge are not allowed. Id. at 1035 (cited case omitted). The Eighth Circuit has explained that "retaliation claims are not reasonably related to underlying discrimination claims." Wallin v. Minn. Dep't of Corr., 153 F.3d 681, 688 (8th Cir. 1998).

Here, Plaintiff's November 18, 2005 EEOC charge included a claim of retaliation with respect to her termination, the disciplinary actions leading to the termination, and TSA's rejection of her resignation, which if accepted, would have entitled Plaintiff to the negotiated financial settlement. Accordingly, TSA's exhaustion argument with respect to these claims is rejected. The Court, however, agrees with TSA that acts of alleged retaliation thereafter were not covered in any EEOC charge. Thus, TSA is entitled to summary judgment as to those claims of retaliation. As TSA had not advanced any other argument for its entitlement to summary judgment on Plaintiff's retaliation claim, resolution of the claim that the circumstances leading up to and surrounding her termination were retaliatory remains for the jury.

The Court now turns to TSA's argument that it is entitled to summary judgment with regard to the merits of Plaintiff's claim of national origin discrimination.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

13

as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Tademe v. Saint Cloud State Univ., 328 F.3d 982, 987 (8th Cir. 2003); Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003). The court must not weigh evidence or make credibility determinations; the moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Because discrimination cases often turn on inferences rather than direct evidence, summary judgment should be "cautiously granted" in such cases. Jacob-Mua v. Veneman, 289 F.3d 517, 520 (8th Cir. 2002); see also Mayer, 318 F.3d at 806.

**National Origin Discrimination Claim against TSA**

Title VII makes it an unlawful employment practice for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff raising claims of employment discrimination may survive a motion for summary judgment either by proof of "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). <u>EEOC v. Trans States Airlines, Inc.</u>, 462 F.3d 987, 991 (8th Cir. 2006). Here, Plaintiff has produced no direct evidence of national origin discrimination on the part of TSA. Even if DePaiva teased Plaintiff about her Filipino name in a way that Plaintiff found offensive, there is no link between his alleged discriminatory animus and TSA's alleged discriminatory conduct in taking DePaiva's side in his dispute with Plaintiff, treating her unfairly in its investigation of the complaints filed against her, disciplining her based upon those complaints, and eventually terminating her in the manner that it did. See <u>Twymon v. Wells Fargo & Co.</u>, 462 F.3d 925, 933 (8th Cir. 2006) (stating that direct evidence does not include stray remarks in the workplace, or statements by nondecisionmakers). Nor would DePaiva's alleged comments themselves constitute unlawful discrimination on the part of TSA. <u>See, e.g.</u>, <u>Birkett v. Glickman</u>, 327 F.3d 658, 662 (8th Cir. 2003) (stating that for hostile work environment claim to succeed, conduct must be so extreme as to change terms and conditions of employment). As such, in order to establish national origin discrimination on the part of TSA, Plaintiff must rely on the burden-shifting method of proof.

Under this method of proof, the plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802. If the plaintiff does so, the burden then shifts to the employer to present a legitimate, non-discriminatory reason for the allegedly discriminatory action. Id. If the employer meets this burden, the burden of production shifts back to the plaintiff to establish that the asserted reasons were merely a pretext for a discriminatory action. Id. at 804.

A plaintiff establishes a prima facie case of discrimination by showing that: (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. Twymon, 462 F.3d at 934 (citing Philip v. Ford Motor Co., 413 F.3d 766, 768 (8th Cir. 2005)). TSA concedes that Plaintiff is a member of a protected class and that she was disciplined and terminated from employment. TSA denies, however, that Plaintiff has shown that she was qualified for her position, or that she was treated differently than similarly situated employees outside of her protected class.

To show that similarly-situated employees were treated differently, Plaintiff would have to prove by "specific, tangible evidence" that (a) non-Filipino employees were treated more favorably than her, and (b) those same employees were "similarly situated [to her] in all relevant respects." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 882 (8th Cir. 2005). Employees are similarly situated when they are involved in or are accused of the same offense and are disciplined in different ways. EEOC v. Trans States Airlines, Inc., 462 F.3d at 993-94; Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir.

1994).

When asked at her deposition of March 14, 2007, if she had any examples of other TSA employees who were treated differently than she was, Plaintiff responded that Tolerico was not fired and that other co-employees who "wrote [her] up" did not experience what she did afterwards during her employment with TSA and after her termination. (Pl.'s Depo. 108.) This falls short of the mark. Here, the stated reason for each disciplinary action against Plaintiff, as well as for her eventual termination, i.e., poor performance, was a legitimate, non-discriminatory reason. Even if the Court were to assume that Plaintiff established a prima facie case of discrimination, Plaintiff has not met her burden to produce admissible evidence showing that TSA's stated legitimate non-discriminatory reasons for its challenged conduct -- poor job performance -- was a pretext for national origin discrimination. See Twymon, 462 F.3d at 935 (explaining that to prove pretext, a plaintiff must both discredit an employer's asserted reason for termination and show that the circumstances permit drawing the reasonable inference that the real reason for terminating the plaintiff was her race). In sum, Plaintiff has not "generated a genuine issue for trial on the ultimate question of discrimination," and TSA is accordingly entitled to summary judgment on this claim. See Riser v. Target Corp., 458 F.3d 817, 821 (8th Cir. 2006), cert. denied, 127 S. Ct. 1382 (2007); see also Pighee v. L'Oreal USA Products, Inc., 351 F. Supp. 2d 885, 893 (E.D. Ark. 2005) (granting employer summary judgment on employer's claim that due to race discrimination, employer conducted an insufficient investigation into complaints against the employee, because employee did not present any evidence that investigation was conducted differently in other cases).

Plaintiff argues in opposition to TSA's motion for summary judgment, that after she complained about DePaiva's discriminatory comments, the work environment became painful and uncomfortable for her due to the fact that, coupled with these comments, co-workers and TSA took DePaiva's side. To the extent that she alleges that TSA's actions in this regard were based upon national origin discrimination, the Court concludes that TSA is entitled to summary judgment on this claim as well. See Higgins v. Gonzales, 481 F.3d 578, 588 (8th Cir. 2007) (granting summary judgment in favor of employer where record did not show "the level of systematic bad treatment adversely affecting" the employment situation such as to constitute an adverse employment action).

**Claims of Breach of the Duty of Fair Representation by Local 618 and Breach of the CBA by TSA**

The gravamen of Plaintiff's claim that Local 618 breached its duty of fair representation is that the union's attorney failed to secure for Plaintiff the terms of the negotiated settlement in return for Plaintiff's resignation. In addition, Plaintiff asserts in her amended complaint that the union's attorney failed adequately to investigate the complaints against Plaintiff that eventually resulted in her termination, to prepare for the arbitration and System Board hearings, to perform competently at those forums, and, ultimately, to prove that the complaints were unfounded and/or retaliatory.

As Local 618 argues, to prevail on her claim against the union, Plaintiff must prove both that TSA breached the CBA and that the union breached its duty of fair representation. See Sanozky v. Intn'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 281-82 (2d Cir. 2005) (stating that the same principles for a hybrid claim under

§ 301 of the Labor Management Relations Act governs such claims under the RLA). The Court rejects Local 618's argument that Plaintiff's claims are precluded by the decisions of the arbitrator and System Board.

> It is established that, if the union has breached its duty of fair representation, by arbitrarily refusing to pursue a claim through the grievance process or by doing so in a perfunctory or otherwise inadequate manner, an aggrieved employee is not foreclosed by the results of the grievance process. He may sue his employer or his union or both but, in order to recover, he must prove that the union breached its duty of fair representation and that the employer breached the [CBA].

Mitchell v. Cont'l Airlines, Inc., 481 F.3d 225, 232 (5th Cir. 2007) (RLA case).

However, the Court finds merit to Local 618's alternate argument that Plaintiff has not presented sufficient evidence of a breach of Local 618's duty of fair representation.

> A union breaches its duty to fairly represent one of its members when its conduct is arbitrary, discriminatory, or in bad faith. A breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious. Rather, a breach occurs when a union makes arbitrary decisions as to the merits of an employee's grievance. Arbitrary conduct is behavior that is so far outside a wide range of reasonableness as to be irrational.

Martin v. Am. Airlines, Inc., 390 F.3d 601, 606 (8th Cir. 2004) (internal citations omitted). Here, upon review of the entire record, including the transcripts of the System Board hearings of January 26, 2005, and April 26, 2006, the Court concludes that Plaintiff has presented no evidence that supports a conclusion that Local 618 acted in a manner that was arbitrary, discriminatory, or in bad faith. See Smith v. Am. Airlines, Inc., 414 F.3d 949, 954 (8th Cir. 2005) (affirming summary judgment against plaintiff's RLA hybrid claim, where plaintiff did not present evidence that union acted arbitrarily); Martin, 390 F.3d at 607 (same); Sanozky, 415 F.3d at 282-83 (same). This decision also disposes of a

breach of contract claim against TSA. See Martin, 390 F.3d at 608 (holding that the "hybrid exception" to the rule precluding judicial review of RLA system boards' decision that just cause existed to terminate the plaintiff does not apply where union did not breach its duty of fair representation); Urena v. Am. Airlines, Inc., 152 Fed. Appx. 63, 66 (2d Cir. 2005) (holding that "the dismissal of the duty of fair representation claim against the union requires the dismissal of the breach of contract claim against the employer"). Lastly, the Court concludes that no other exception to the preclusion of judicial review of the System Board's and arbitrator's decisions that TSA did not breach the CBA exist here. See Martin, 390 F.3d at 608-09 (listing narrow exceptions, including the "hybrid exception" the "contract repudiation exception," and the "futility exception").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Trans States Airlines, Inc.'s motion for summary judgment is **GRANTED** in part and **DENIED** in part. The motion is granted with respect to Plaintiff's claims of national origin discrimination, and of breach of the CBA, and denied with respect to Plaintiff's claim of retaliation based upon her termination. [Doc. #57]

**IT IS FURTHER ORDERED** that Defendant Local 618's motion for summary judgment is **GRANTED**. [Doc. #60]

AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of November, 2007.